UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALVIN R. MOSBY,

                    Petitioner,                  Case No. 2:18-cv-12653
                                                   Hon. Mark A. Goldsmith

v.

SHERMAN CAMPBELL,[1]

                    Respondent.
_____/

**OPINION AND ORDER
(1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Dkts. 16,
26); (2) GRANTING MOTION FOR EXTENSION OF TIME TO FILE REPLY (Dkt.
32); (3) DENYING MOTIONS FOR APPOINTMENT OF COUNSEL (Dkts. 19, 22);
AND (4) DENYING MOTIONS FOR EVIDENTIARY HEARING (Dkts. 18, 23)**

Calvin R. Mosby, a Michigan state prisoner, filed this habeas corpus proceeding under 28

U.S.C. § 2254. Mosby challenges his Wayne Circuit Court jury trial conviction of first-degree

murder, Mich. Comp. L. § 750.316; assault with intent to commit murder, Mich. Comp. L. §

750.83; felon in possession of a firearm, Mich. Comp. L. § 750.224f; and felony firearm, Mich.

Comp. L. § 750.227b. The court sentenced Mosby to mandatory life for the murder conviction

and lesser terms for the other offenses. The amended habeas petition raises thirteen claims

challenging the convictions. Because all the claims are without merit, the amended petition will

be denied.

---

[1] The Court substitutes the current Warden of the Gus Harrison Correctional Facility, where Mosby is incarcerated, as Respondent. See Habeas Rule 2(a), 28 U.S.C. § 2254.

1

# I. BACKGROUND

Mosby was charged with shooting an assault rifle into the back of his former girlfriend's townhouse, killing her eight-year-old son.   The Michigan Court of Appeals summarized the evidence presented at trial:

> This appeal involves the murder of eight-year-old [J.P.], who lived at 682 East in an area known as the Brewster Projects. The prosecution's theory of the case was that Mosby became enraged after his ex-girlfriend, Samona Cochran, accused Mosby of breaking into her home. Mosby, accompanied by 16-year-old Devontae Starks, used a SKS rifle he received from [his co-defendant Tyron] Anderson to shoot at Cochran's home, killing [J.P.] as he slept in his bed in the early morning hours of July 30, 2014. The defendants were tried together before separate juries.
>
> Cochran testified that she stopped seeing Mosby in April 2014, three months before the shooting. At that time, Mosby told Cochran that if he "couldn't have me, nobody would." He had threatened to break out her windows and kill the people around her, causing her to file a police report. Cochran returned home from breakfast on July 29, 2014, to find that her home had been broken into. She called the police, who located her property under a nearby tree. When officers first arrived, Cochran did not name Mosby as a possible suspect. But Mosby called her, accusing her of telling the officers that he was responsible. While Cochran had not mentioned Mosby's name to police, she had discussed him as a possible suspect with her neighbors. After arguing with Mosby, Cochran went back out to where the officers were and specifically mentioned Mosby. Mosby left voicemails for Cochran that day. In one, he threatened to "blow your f***** brains."
>
> Starks testified for the prosecution as part of a plea deal. He testified that Mosby was a neighborhood tattoo artist. The two of them had a "joint venture" whereby Starks would sell marijuana to Mosby's customers. Starks testified that he and a friend were responsible for breaking into Cochran's home. Starks's friend believed that Cochran had stolen some marijuana from him. The two men stole various items and left them under a nearby tree. Starks ran into Mosby shortly after the robbery and heard Mosby angrily say that Cochran had accused him of the theft. Mosby threatened to kill Cochran. Two neighbors testified that Mosby said that he would kill Cochran and her son because she was accusing Mosby of breaking into her home. Starks did not tell Mosby that he was the person who broke into Cochran's home because he was afraid that Mosby would kill him.
>
> Early in the afternoon of July 29, 2014, Starks and Mosby left the neighborhood so that Mosby could tattoo Starks's girlfriend's sister. Throughout the afternoon, Mosby remained angry. When Mosby and Starks returned to the neighborhood that evening, Mosby told Starks that the shooting of the house was about to go down. Anderson arrived in a black Jeep with a passenger. Anderson gave Mosby a dark

2

hoodie and a semi-automatic rifle and agreed to meet Mosby and Starks after the shooting. Mosby and Starks went to the rear of Cochran's home where [J.P.] slept. Mosby aimed the gun at the building and Starks ran. Starks heard multiple gunshots.

After the shooting, Starks and Mosby ran to their prearranged location, where Anderson was waiting in his Jeep. Eventually, Anderson dropped off Mosby and Starks. Starks gave the gun to Anderson's passenger before he left. Mosby and Starks went to Starks's girlfriend's house, where Mosby threatened to kill Starks if he told anyone. Starks gave Mosby money for a bus ticket and a different shirt. Mosby and Starks later were arrested.

Police executed a search warrant at Anderson's house and found the SKS rifle that had been used to kill [J.P.] along with a magazine and bullets. Police technicians determined that Anderson was the seventh most frequent contact on Mosby's cell phone. On the morning after the shooting, Mosby sent a text to Anderson, "News report 8-year-old boy shot."

During his jail calls, Anderson indicated that "the juv," presumably Starks, would be testifying and said, "one of them n****s is telling." At trial, the officer in charge testified that Starks' mother had been moved, as she had received threats from the person who had been the passenger in defendant's Jeep.

People v. Mosby, No. 328134, 2016 WL 6667951 at *1–*2 (Mich. Ct. App. Nov. 10, 2016).

After he was sentenced, Mosby filed a direct appeal. His appellate counsel filed a brief on appeal that raised five claims:

I. If the evidence is not sufficient for a rational trier of fact to find guilt beyond a reasonable doubt, the defendant's conviction must be reversed. The evidence was not sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant shot the rifle at the back of the house on the night of the shooting. Therefore, defendant's convictions must be reversed.

II. A witness is not competent to testify when the witness lacks the capacity and sense of obligation to testify truthfully and understandably. Devontae Starks' testimony was so inherently incredible that the record shows that Starks did not have the capacity and sense of obligation to testify truthfully. Therefore, the trial court erred in finding Devontae Starks competent to testify.

III. The prosecutor has a duty to see that the defendant receives a fair trial, and may only procure a conviction using methods in accord with the fair and impartial administration of justice. The cumulative effect of the prosecution's improper comments and excessive use of leading questions prejudiced defendant and denied him a fair trial. Therefore, defendant's conviction should be reversed.

3

IV. A victim cannot be excluded from the courtroom for crying, but should be excluded when the crying is excessive and prejudices the defendant. The record shows that Samona Cochran's crying in the courtroom was continual, and the trial court refused to take any action to correct the situation of exclude Cochran from the courtroom to avoid any possible prejudice to defendant. Therefore, defendant is entitled to reversal of his conviction.

V. Under Michigan's indeterminate sentence law a defendant's minimum sentence may not exceed two-thirds of his maximum sentence. defendant's minimum sentence of 25 years exceeded two-thirds of his maximum sentence of 30 years on counts two and three. Therefore, defendant is entitled to resentencing.

The Michigan Court of Appeals affirmed. Mosby, 2016 WL 6667951. Mosby subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied leave to appeal. People v. Mosby, 895 N.W.2d 524 (Mich. 2017) (Table).

Mosby thereafter filed his federal habeas petition, and the Court stayed the case so that he could return to the state court and exhaust additional claims See Dkt. 11. Mosby then filed a motion for relief from judgment in the trial court, raising the following claims:

I. The jury should have been instructed that prosecution witness Devaunte Starks's perjured testimony and/or false evidence must be disregarded unless it could be corroborated through other prosecution witnesses. The ailing instruction by itself so infected the entire trial that the resulting conviction violated due process.

II. The prosecutor's failure to correct prosecution witness Devontae Starks's perjured testimony and the district court's and trial court's false evidence denied petitioner due process of law and a fair trial when the district court permitted the prosecution to use prosecution witness Devaunte Starks's false evidence and perjured testimony to prosecute and convict the defendant.

III. Defendant's convictions must be reversed because the warrant was issued as a result of allegations of deliberate falsehood and/or of a reckless disregard for the truth. The false statements were necessary to the magistrate judge's probable-cause determination. Therefore, defendant's convictions and warrants must be voided.

IV. Prosecutorial misconduct was flagrant and warrant [sic] reversal because the prosecutor could not vouch for his key prosecution witness's false claim that he had been threatened by defendant's codefendant and defendant. The prosecutor knew that his witness had already lied regarding material facts, had committed perjury,

4

and had aided and abetted in the murder, and/or was the principal. There was no corroborating evidence that key prosecution witness Devaunte Starks's claims of threats could be corroborated before the prosecutor could vouch for witness Devaunte Starks's credibility as a witness.

V. Defendant was denied his right to effective assistance of counsel where trial counsel failed to object to prosecutorial misconduct during the prosecutor's rebuttal argument to the jury.

VI. The trial court erred reversibly in instructing the jury on flight because there was no evidence that defendant feared apprehension at the time he allegedly left the crime scene.

VII. Despite trial counsel's failure to object, it was prosecutorial misconduct for the prosecutor to make material misrepresentations or misstatements of facts regarding flight in summation. There was no evidence presented at trial that petitioner knew the police was [sic] looking for him or he feared apprehension by law enforcement.

VIII. Defendant contends that the trial court abused its discretion and denied defendant due process of law when the court refused and failed to listen to the county jail phone calls, MRE 804(b)(3) evidence, prior to allowing the prosecution to admit defendant's and his codefendant's county jail phone calls in violation of MRE 804(b)(3).

IX. Defendant was denied his state and federal constitutional rights to the effective assistance of trial and appellate counsel [where:]

> A. Trial counsel's failure to impeach key prosecution witness Starks with his false evidence and perjured testimony was an egregious error in defendant's case, and it denied defendant due process of law and effective assistance of counsel for his substantial defense.

> B. Trial counsel's failure to object when the prosecutor was vouching for prosecution witness Devaunte Starks's claim that he was threatened by defendant and his codefendant denied defendant due process of law and a fair trial.

> C. Appellate counsel's failure to timely review, adequately investigate, and raise federalized constitutional claims on appeal before the time expired for appeal was ineffective assistance of appellate counsel.

Dkt. 31-1 (citations omitted).

The trial court denied the motion in a written opinion, finding that some of Mosby's claims had already been rejected by the Michigan Court of Appeals on direct review and some of the claims lacked merit. It also discussed Mosby's obligation to demonstrate good cause for his failure to raise his new claims on direct appeal as required by Michigan Court Rule 6.508(D)(3). Dkt. 31-2.

Mosby appealed. The Michigan Court of Appeals denied leave to appeal because Mosby failed to demonstrate that the trial court erred in denying the motion for relief from judgment. Dkt. 31-3. The Michigan Supreme Court denied leave to appeal with citation to Michigan Court Rule 6.508(D). Dkt. 31-4.

Mosby then filed his amended petition, raising all the claims he raised in the state courts on direct and collateral review (Dkts. 16, 26). He also filed a motion to lift the stay (Dkts. 17, 25), which the Court granted (Dkt. 28). The Court ordered a responsive pleading and reply, and the case is now ready for decision.[2]

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

---

[2] Mosby's motion to for extension time to file his reply brief (Dkt. 32), which was filed on August 23, 2023, is granted.

arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–406 (2000)).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the fact of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103–104 punctuation modified).

## III. ANALYSIS

### A. Amended Petition

#### 1. Insufficient Evidence

Mosby's first claim asserts that constitutionally insufficient evidence was presented at trial to sustain his conviction. He asserts that there were no eyewitnesses who saw him shoot at the victims' house, and that the prosecutor's case relied on the unreliable testimony of Devonte Starks, who had a motive to falsely accuse Mosby of the crime. The claim was rejected on the merits by

the Michigan Court of Appeals on direct review.  Respondent asserts that the state court adjudication reasonably applied the clearly established Supreme Court standard.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In Re Winship, 397 U.S. 358, 364 (1970).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Id. at 318–319 (punctuation modified, emphasis in original).  "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt."  Id. at 319 (emphasis in original).

More importantly, a federal habeas court may not overturn a state-court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state-court decision was an objectively unreasonable application of the Jackson standard.  See Cavazos v. Smith, 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  Id.  Indeed, for a federal habeas court reviewing a state-court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality."  Coleman v. Johnson, 566

U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA."  Id.

After reciting the established standard, the Michigan Court of Appeals summarized the evidence presented at trial that allowed the jury to find beyond a reasonable doubt Mosby's identity as the perpetrator of the crimes:

> There was sufficient evidence that Mosby was the shooter. Numerous witnesses testified that Mosby was upset with Cochran, thinking that she had given his name to police as a possible suspect for the break-in. He verbalized his intent to kill Cochran and anyone else in her home. Mosby's cellular records put him in the area of the shooting and in contact with Anderson, who provided the gun and transportation. Although no one actually saw Mosby shoot the weapon at Cochran's house, the circumstantial evidence and inferences therefrom were sufficient to prove Mosby's guilt.

Mosby, 2016 WL 6667951, at *4–*5 (emphasis in original).

The state court reasonably applied the Jackson standard.  First, it is true that Starks's testimony formed an important part of the prosecutor's case.  Starks explained at trial how he was the one who had stolen the items from Cochran's house and knew that she mistakenly blamed Mosby for it.  Starks testified that because he feared Mosby, he nevertheless allowed events to unfold.  Starks testified that he went along with Mosby and Anderson, and he saw Mosby take the rifle and walk towards the victims' townhome.  He then heard shots and saw Mosby run back to Anderson's waiting vehicle.  Dkt. 11-6 at 208–210.

Mosby asserts that Starks's account was contradicted by eyewitnesses and his prior inconsistent statements.  For example, Gail Owens testified at trial that she looked out of her bedroom window ten to twenty seconds after she heard gunfire and saw Mosby walking in a different direction than described by Starks. Dkt. 11-5 at 153–155, 164–166.  She also described Mosby as wearing different clothing than described by Starks.  Id. at 154, 164.  And she did not see Mosby carrying a rifle.  Id. at 154, 166.  Similarly, Frank Larkin testified that he saw Mosby

walking down the street two or three minutes after he heard the gunshots.  Dkt. 11-6 at 35–36, 42–43.  He also did not see Mosby carrying a rifle.  Id. at 47.  Mosby notes that Starks had a strong motivation to falsely accuse him as Starks only received three years of probation in exchange for his testimony though he was present at the scene of the shooting.

Under the established constitutional standard, however, the fact that serious challenges were raised to Starks's credibility was a question for the jury and not for a court reviewing the legal sufficiency of the evidence.  See Herrera v. Collins, 506 U.S. 390, 401–402 (1993).  Attacking the credibility of a witness constitutes a challenge to the quality but not the legal sufficiency of the evidence.  See Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002).  Accordingly, to the extent Mosby's argument relies on his assertion that Starks lacked credibility, he does not show that the adjudication of his claim by the state court unreasonably applied the Jackson standard.

In any event, there was ample additional evidence presented at trial establishing Mosby's identity as the shooter.  Evidence was presented that Mosby told several people just before the shooting that he intended to murder Cochran and her son.  He left a voicemail for Cochran that he'd "blow [her] fuckin' brains."  Dkt. 11-5 at 10.  He told a second witness that "he was gonna kill her and her son."  Id. at 121.  He told a third witness that he was going to kill Cochran and anyone else in her house.  Id. at 151.  And he told a fourth person he was "gonna' kill this bitch." Dkt. 11-6 at 14.

Additionally, a police dog alerted to the presence of gunpowder on the bag Mosby had with him when he was arrested at the Greyhound bus station in the early morning after the shooting. Dkt. 11-8 at 30–31.  Cell phone records indicated that Mosby was in the area at the time of the shooting, as did the testimony of the two other eyewitnesses mentioned above.  Dkt. 11-9 at 19–

37. The records also indicated that Mosby was in contact with Anderson by phone and text message the day he made the threats and the day of the murder. Finally, the assault rifle used in the shooting was found at Anderson's house. Dkt. 11-7 at 105–114; Dkt. 11-6 at 192–221; Dkt. 11-9 at 104–105.

Taken together and viewed most favorably to the prosecution as the established Supreme Court standard directs, sufficient evidence was presented at trial to demonstrate beyond a reasonable doubt that Mosby was the man who fired into the victims' townhouse with the intent to murder the occupants. The rejection of the claim by the Michigan Court of Appeals did not fall below the threshold of "bare rationality." Coleman, 566 U.S. at 656. Mosby fails to demonstrate entitlement to habeas relief with respect to this claim.

### 2. Starks's Competency

Mosby's second claim asserts that the trial court erred in admitting Starks's testimony without first determining whether he was competent to testify. Mosby does not assert that Starks lacked the physical or mental capacity to testify. Rather, he asserts that Starks's bias, inconsistencies, and the contrary testimony offered by other witnesses rendered his testimony so unreliable that he should have been deemed incompetent under Michigan Rule of Evidence 601. The Michigan Court of Appeals found the claim was unpreserved and that it was without merit because the factors cited by Mosby went "to Starks's credibility, not competency." Mosby, 2016 WL 6667951, at *10.

The Supreme Court explained that it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Federal habeas review is "limited to deciding whether a state court conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. Errors in the application

11

of state law, especially rulings regarding the admission or exclusion of evidence are generally not to be questioned on federal habeas review.  Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000).

Mosby's claim that Rule 601 may be implicated by a witness's alleged bias is not supported by any federal precedent.  As Mosby alleges no violation of "the Constitution, laws, or treaties of the United States," his claim is not cognizable on federal habeas review.  Estelle, 502 U.S. at 68.

### 3.  Prosecutorial Misconduct

Mosby's third claim asserts that the prosecutor committed misconduct by vouching for Starks's credibility, arguing facts not in evidence, and using leading questions.  The Michigan Court of Appeals found the claims unpreserved and without merit.  Respondent asserts review of the claim is defaulted and that, in the alternative, the state court reasonably adjudicated the claim. The Court will proceed to the merits of the claim as it provides the simplest basis for decision.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned."  Id. at 181 (punctuation modified).  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair."  Byrd v. Collins, 209 F.3d 486, 529 (6th Cir. 2000) (punctuation modified).

The Darden standard "is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'"  Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting Yarborough, 541 U.S. at 664.  "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-

12

misconduct claim unless a petitioner cites . . . other Supreme Court precedent that shows the state

court's determination in a particular factual context was unreasonable.'" Stewart v. Trierweiler,

867 F.3d 633, 638–639 (6th Cir. 2017) (quoting Trimble v. Bobby, 804 F.3d 767, 783 (6th Cir.

2015)).

Mosby first claims that the prosecutor vouched for the credibility of Starks by stating in

rebuttal argument that the police investigation was done "right," which he claims implies that the

testimony presented was true.  The state court found that the comment did not constitute improper

vouching:

> Mosby argues that the prosecutor improperly vouched for Starks's testimony when
> the prosecutor told the jury "we want you to know that the work is done and it's
> done right, that's the nature of the evidence."  "A prosecutor may not vouch for the
> credibility of his witnesses by suggesting that he has some special knowledge of
> the witnesses' truthfulness." People v. Seals, 285 Mich. App. 1, 22 (2009).
>
> Mosby takes the prosecutor's comments out of context. The prosecutor made the
> statement, not to vouch for Starks, but in response to Mosby's assertion that there
> was no fingerprint evidence. The prosecutor explained that, unlike on television,
> police were often asked to make a choice between testing for DNA evidence or
> fingerprints:
>
>> We send the gun for prints, the testimony in this case, we have to
>> choose because one test will wipe out the other test.  The DNA is
>> the more thorough test.  It's not like CSI.  You get mixed profiles,
>> people have touched that gun, we had DNA on the gun, we just can't
>> get the profile of it. We want you to know that the work is done and
>> it's done right, that's the nature of the evidence. I wish we were like
>> CSI, but it's not. But you've got Mr. Mosby and Mr. Anderson
>> telling on themselves, you've got all the physical evidence in this
>> case. You've got Mr. Mosby making these threats all day long,
>> talking about what he was gonna do, leaving voice mails, calling his
>> friend, Mr. Anderson, who has that SKS assault rifle.
>
> The comments were a fair response to Mosby's attempt to point to the lack of
> physical evidence connecting him to the gun.

Mosby, 2016 WL 6667951, at *8–*9.

Improper vouching, as a form of prosecutorial misconduct, "occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." <u>United States v. Francis</u>, 170 F.3d 546, 550 (6th Cir. 1999). "Generally, improper vouching involves either blunt comments [relating to a witness's credibility], or comments that imply that the prosecutor had special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." <u>Id</u>. (citations omitted). A fair reading of the record supports the determination by the state court that the prosecutor's comment did not vouch for Starks's credibility. The prosecutor's brief comment was made in prelude to a recitation of the evidence indicating Mosby's guilt. It did not suggest that the prosecutor had hidden knowledge that Starks was being truthful. The state court did not unreasonably apply the established Supreme Court standard.

Mosby next argues that the prosecutor argued facts not in evidence when she told the jury that Mosby transferred gunshot residue from his hand to his bag. The state court rejected the allegation as follows:

> "It is improper bolstering for a prosecutor to vouch for credibility of facts and evidence not in the case." <u>People v. Stanaway</u>, 446 Mich. 643, 686 (1994). The prosecutor argued:
>
> > Mr. Starks is not the shooter, that's why the dog didn't hit on Mr. Starks shirt, but that bag, that giant bag. What's the first thing that Mr. Mosby went and picked up after shooting that gun and handling that gun? His bag. You pick up the bag, when you pick up something, yeah, it can transfer the residue. You can put it on your back when you fire the gun. Yeah, that gunshot residue it's gonna transfer onto that bag, and sure enough the dog hits on that bag.
>
> The prosecutor did not argue facts not in evidence. Starks testified that Mosby retrieved his tattoo bag after the shooting.

<u>Mosby</u>, 2016 WL 6667951, at *9.

14

This decision is reasonably supported by the record.  The statement was supported by Starks's testimony that Mosby picked up his bag minutes after shooting the rifle.  <u>See</u> Dkt. 11-6 at 209–211.  The police dog alerted to the presence of gunshot residue on the bag, and there was testimony that such residue can be transferred from someone's hand.  Dkt. 11-8 at 19–20.

Finally, Mosby asserts that the prosecutor improperly asked witnesses leading questions.  The state court found that the allegation lacked sufficient development to demonstrate entitlement to relief:

> Mosby also argues that he was prejudiced by the prosecutor's "excessive use of leading questions during her direct examination of the witnesses" and then basically points to two instances in the record. Defense counsel never objected.  Mosby fails to make a cogent argument as to how he was prejudiced by such leading questions.

<u>Mosby</u>, 2016 WL 6667951, at *9.

The trial record supports this decision.  Mosby presented the state courts with only two instances of leading questions.  The first occurred when the prosecutor questioned Cochran about whether Mosby threatened her on the phone.  Dkt. 11-5 at 30.  Rather than ask Cochran an open-ended question about what Mosby told her, the prosecutor asked if he had threatened her.  While the question was therefore arguably leading, it was a permissible means to efficiently elicit testimony that both parties expected.  The same holds true with the other allegation.  The prosecutor used arguably leading questions to elicit testimony from Starks that he lied in his initial statement to police.  Dkt. 11-6 at 229–230.  Again, this was merely an efficient way for the prosecutor to elicit background testimony—the same testimony that defense counsel used to impeach Starks.  The state court reasonably concluded based on the record that Mosby's defense was not prejudiced by the use of these two leading questions.

Mosby's prosecutorial misconduct claim is without merit

**4. Denial of a Fair Trial**

Mosby asserts in his fourth claim that he was denied a fair trial when Cochran was seen by the jury crying in the courtroom.  The record indicates that Cochran began crying while in the seated in the gallery during the presentation of her 9-1-1 call and again when photographs of her son's bedroom were shown.  Defense counsel asked that Cochran be removed because her crying prevented Mosby from receiving a fair trial.  The trial court found that Cochran, as a complainant, had a right under state law to remain during trial.  The court noted that it would instruct the jury not to allow emotion or sympathy to enter into their deliberations.  The Michigan Court of Appeals found that Mosby failed to support the claim with legal authority that he had a right to have Cochran removed from the courtroom.  Mosby, 2016 WL 6667951, at *10–*11.

The state court adjudication did not run contrary to clearly established law because no Supreme Court case holds that a defendant has a constitutional right to remove a crying complainant from the courtroom during trial.  In Carey v. Musladin, 549 U.S. 70 (2006), the Ninth Circuit had granted habeas relief on the ground that members of the murder victim's family sat in the spectator's gallery during trial while wearing buttons depicting the victim.  The Supreme Court reversed, holding that it had never addressed a claim that private-actor courtroom conduct could be so inherently prejudicial that it deprived a defendant of a fair trial.  The Court noted that the most closely related cases involved government-sponsored conduct, and the rationale of those cases did not clearly extend to private courtroom spectators.  The Court concluded that the state court's rejection of the habeas petitioner's claim could therefore not be an unreasonable application of clearly established precedent under § 2254(d).

Mosby's claim is analogous to the one presented in Carey.  Cochran's emotional display in the courtroom was the conduct of a private actor akin to the family members' conduct in Carey.

16

As in <u>Carey</u>, Mosby's claim fails because he cannot point to clearly established Supreme Court precedent that could be extended to compel the state court to resolve the claim in his favor.

### 5.  Sentence Range

Mosby's fifth claim asserts that he was erroneously sentenced to a term of 25–30 years for his assault with intent to commit murder conviction.  Mosby asserts that this narrow sentence range violates <u>People v. Tanner</u>, 199 N.W.2d 202, 204–205 (Mich. 1972), and Mich. Comp. L. § 769.34(2)(b), which prohibit the minimum term of an indeterminate sentence from exceeding two-thirds of the statutory maximum term.  Though it was presented to the state courts on direct appeal, the Michigan Court of Appeals did not address the claim in its opinion.

The claim is not cognizable on federal habeas review because it is based on the alleged violation of a state law.  The claim, therefore, does not state a cognizable basis for relief under § 2254(a).

Moreover, as a matter of state law, the <u>Tanner</u> rule does not apply where the maximum sentence is life imprisonment or "life or any term of years."  <u>People v. Powe</u>, 679 N.W.2d 67 (Table) (Mich. 2004); <u>People v. Drohan</u>, 715 N.W.2d 778 (Mich. 2006); <u>People v. Harper</u>, 739 N.W.2d 523 (Mich. 2007); <u>People v. Washington</u>, 795 N.W.2d 816 (Mich. 2011); <u>People v. Floyd</u>, 804 N.W.2d 564 (Mich. 2011).  The maximum penalty for assault with intent to commit murder is "life or any number of years."  Mich. Comp. L. § 750.83.  Accordingly, even if the claim were cognizable, it is without merit.

### 6.  False Testimony

The Court will group Mosby's sixth and seventh claims together as they are based on the same factual predicate that Starks testified falsely against him.  In his sixth claim, Mosby asserts that the trial court should have instructed the jury that it could only accept Starks's testimony if it

17

found that it was corroborated by other evidence.  His seventh claim asserts that the prosecutor committed misconduct by allowing Starks to testify falsely against him.

As an initial matter, however, the court notes that all of Mosby's remaining claims were raised in the state courts in his post-conviction review proceeding under Mich. Ct. R. 6.500 et seq. Respondent asserts that review of the claims is barred because the trial court relied on the state-law procedural ground found in Rule 6.508(D)(3) as a basis for rejecting the claims.  The Court, however, finds that whether the trial court clearly and expressly relied on Rule 6.508(d)(3) presents an uncertain question regarding the interpretation of the trial court order.  C.f. Thomas v. Burt, 2023 WL 544379, *7–*8 (6th Cir. Aug. 24, 2023).  The Court deems it more efficient to proceed directly to the merits of Mosby's post-conviction claims because they can be more easily resolved against him on that basis.  Lambrix, 520 U.S. at 525.

Turning to the merits of Mosby's sixth and seventh claims, Mosby focuses on Starks's testimony that he saw Mosby carrying a rifle towards the scene immediately prior to the shooting. Dkt. 11-6 at 201–209.  Mosby claims that this testimony was indisputably false because: (1) Mosby was not in possession of a rifle when he was arrested; (2) Mosby's DNA was not found on the rifle recovered from Anderson's property; (3) no gunshot residue was found on Mosby or his clothing; (4) Starks's hands and clothing were not checked for gunshot residue; (5) Owens testified that she looked outside her window seconds after the shooting and saw Mosby walking outside, but she did not see him with a rifle; (6) Larkin similarly testified that he looked out from his door minutes after the shooting and also saw Mosby walking outside, but he was not carrying anything; and (7) Starks admitted at trial that he lied about other facts in order to obtain a favorable plea deal.  Am. Pet. at PageID.2364–2366, 2369–2371(Dkt. 26).

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. Giglio v. United States, 405 U.S. 150, 153 (1972). To establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony, a habeas petitioner must show that a witness' statement was "indisputably false." Byrd, 209 F.3d at 517–518. The habeas petitioner bears the burden of demonstrating the testimony introduced was false or perjured. Brooks v. Tennessee, 626 F.3d 878, 895 (6th Cir. 2010). Mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by the prosecutor. See Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). Moreover, the fact that a witness contradicts herself or changes her story also does not establish perjury. See Malcum v. Burt, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

Mosby fails to demonstrate that Starks testimony that he saw Mosby with the rifle at the crime scene was indisputably false. As above, Mosby presents arguments calling into question Starks's credibility that were more appropriately presented to, and were apparently rejected by, the jury. The fact that Mosby claims Starks was not adequately investigated does not indisputably establish that his testimony was false. The fact that two other eyewitnesses did not see Mosby with a rifle at the scene only shows that inconsistent evidence or incomplete accounts were presented at trial, a not uncommon occurrence. The fact that Mosby did not test positive for gunshot residue on his hands or clothes ignores the fact that such residue was found on his bag. Finally, the assertion that Starks admitted lying to police does not show that his testimony was indisputably false. Starks admitted that he told different versions of events to the police—starting with his denial of any involvement in the incident and ending with essentially the same version he gave at trial. That circumstance does not establish perjury. See Malcum, 276 F. Supp. 2d at 684. The false-evidence claim is without merit.

19

Turning to Mosby's sixth claim, habeas relief is not warranted based on an erroneous jury instruction unless "the instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates federal due process." Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Mosby fails to show that he was entitled to a jury instruction that Starks's testimony should not be accepted without corroboration, let alone that the absence of such an instruction violates due process.

Contrary to Mosby's claim, the record shows that the jury was properly instructed on the factors it could consider in evaluating the credibility of the witnesses. See Dkt. 11-10 at 123–125. The jury was also specifically instructed to "examine . . . closely and be careful about accepting" Starks's testimony, noting that he was an accomplice and may have had an interest in the outcome or other bias, and that he may have been made promises that led to false testimony. Id. at 129–131. The Court also directed the jury to consider "whether [Starks'] testimony is supported by other evidence, because then it may be more reliable." Id. The jury instructions with respect to Starks adequately presented the issues involved, and they did not render Mosby's trial fundamentally unfair.

Mosby's sixth and seventh claims are therefore without merit.

### 7. Fourth Amendment

Mosby's eighth claim asserts that he was arrested in violation of the Fourth Amendment. Specifically, he argues that the warrant for his arrest relied on the false accusations made by Starks.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494–495 (1976). "Michigan has a

procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." Robinson v. Jackson, 366 F. Supp. 2d 524, 527 (E.D. Mich.2005). Mosby raised his Fourth Amendment claim in his state post-conviction review proceeding, and the trial court rejected this claim on the merits. Dkt. 31-2 at 8–9. Mosby makes no allegation that presentation of his Fourth Amendment claim was frustrated by a failure of state court procedures for presentation of that claim. Accordingly, review of this claim is barred under Stone.

### 8. Prosecutorial Misconduct and Ineffective Assistance of Counsel

Mosby's ninth claim asserts that the prosecutor committed misconduct by: (1) vouching for Starks's credibility when he asserted that Mosby threatened Starks, (2) asserting that Mosby was evading arrest without presenting any evidence that he knew police were looking for him, and (3) asserting without evidentiary support that Starks was not the shooter. Mosby's related tenth claim asserts that his counsel was ineffective for failing to object to these arguments.

The standard governing prosecutorial misconduct claims appears in Section III(C) above. Under this standard, it is not improper for a prosecutor to argue reasonable inferences from the evidence presented at trial. Byrd, 209 F.3d at 535. Here, all of the complained-of remarks were supported by evidence presented by the prosecutor at trial or involved reasonably inferences from the evidence presented.

First, the prosecutor asserted during closing argument that while Starks was in prison prior to trial he received threats from Mosby and co-defendant Anderson. See Dkt. 11-10 at 105–106. This argument was fairly based on Starks's testimony that he heard of the threats through other prisoners. Dkt. 11-6 at 239–242. Next, the prosecutor's argument that Mosby was evading arrest was a fair inference drawn from evidence presented at trial that Mosby attempted to board a Greyhound bus bound for Indiana in the early morning hours after the shooting. Dkt. 11-7,at 44,

83–85; Dkt. 11-9 at 23–24.  Finally, the prosecutor certainly was permitted to argue that Starks was not the shooter based on the ample circumstantial evidence she presented to indicate that Mosby shot at the victims' townhouse.  None of the remarks were improper or denied Mosby a fair trial.

It follows that Mosby's trial counsel was not ineffective for failing to object to the comments and arguments made by the prosecutor.  See Mahdi v. Bagley, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").  These claims are without merit.

### 9.  Jury Instructions

Mosby asserts in his eleventh claim that the trial court erroneously instructed the jury on flight when there was no evidence presented showing that he evaded arrest.

The standard governing erroneous jury instruction claims was set forth above in Section III(A)(6).  With respect to the alleged flight of the defendant, a jury may be instructed that it can consider evidence of flight so long as it is directed: (1) to make its own determination whether the evidence, in fact, showed that the defendant fled, and if so, (2) it may consider whether the flight demonstrated that the defendant had a guilty state of mind.  See Burton v. Renico, 391 F.3d 764, 778 (6th Cir. 2004) (citing Mitzel v. Tate, 267 F.3d 524, 536 (6th Cir. 2001)).

Here, the trial court instructed the jury on flight as follows:

> There has been some evidence that the defendant tried to run away or hide after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of consciousness of guilt. You must decide whether the evidence is true and if true, it shows that the defendant had a guilty state of mind.

Dkt. 11-10 at 127–128.

The instruction did not render Mosby's trial fundamentally unfair.  The instruction left it to the jury to decide whether the evidence indicated that Mosby tried to flee, and it left it to the jury to decide whether his actions reflected a guilty state of mind.  The claim is without merit.

### 10.  Admission of Phone Call Evidence

Mosby's twelfth claim asserts that his phone call from jail was erroneously admitted at trial in violation of Michigan Rule of Evidence 804(b)(3) when the trial court failed to listen to the recording before allowing its admission into evidence.  Mosby also asserts that the prosecutor improperly used the calls during closing argument, rendering his trial unfair.

 First, to the extent that Mosby argues that the evidence should not have been admitted under Rule 804(b)(3), his claim is not cognizable on habeas review.  As indicated above, federal habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  And whether evidence was properly admitted under state law "is no part of a federal court's habeas review of a state conviction…."  Estelle, 502 U.S. at 67.

Turning to the prosecutorial misconduct claim, a police officer testified at trial that Mosby called a woman from jail and told her that he was not concerned because Stark's statement against him "don't work."  Dkt. 11-9 at 128–131.  In closing argument, the prosecutor suggested the timing of the statement—prior to Starks making a deal to testify—suggested Mosby's consciousness of guilt.  Dkt. 11-10 at 48–51.  Though this was not an especially strong inference, it accurately described the contents of the call and did not have a tendency to mislead the jury regarding the evidence presented.  This isolated part of the closing argument did not render Mosby's trial fundamentally unfair in violation of due process.  See e.g., Joseph v. Coyle, 469 F.3d 441, 474 (6th Cir. 2006) (isolated improper comment by prosecutor during closing argument does not justify federal habeas relief).  This claim is without merit.

### 11.  Ineffective Assistance of Counsel

Finally, Mosby asserts in his thirteenth claim that his trial counsel provided ineffective assistance of counsel when he failed to adequately cross-examine Starks to show that his testimony was false and failed to object to the prosecutor's improper arguments regarding Stark's reliability. Mosby also asserts that his appellate counsel was ineffective for the failing to raise these issues on direct review.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set out the familiar two-prong test for determining whether a counsel's assistance is so deficient that it requires a conviction to be set aside.  "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Id</u>. at 687.

"Whether counsel's performance was 'deficient' under the first prong is determined by reference to 'an objective standard of reasonableness'—specifically, 'reasonableness under prevailing professional norms.'" <u>Hendrix v. Palmer</u>, 893 F.3d 906, 921 (6th Cir. 2018) (quoting <u>Strickland</u>, 466 U.S. at 688).  A trial counsel's "tactical decisions are particularly difficult to attack," meaning that a defendant "attacking his lawyer's performance 'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" <u>O'Hara v. Wigginton</u>, 24 F.3d 823, 828 (6th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 689).  Impeachment strategy falls within this category of trial tactics.  <u>Dell v. Straub</u>, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).

24

Mosby fails to demonstrate that his counsel was ineffective with respect to the way he sought to discredit Starks.  Defense counsel repeatedly attacked Starks on cross-examination by attempting to show that he had an interest to shift blame onto Mosby, and he used the inconsistencies between Starks's prior statements and testimony and the other evidence to suggest Starks's testimony was untruthful.  See Dkt. 11-6 at 248–250, 262, 267–269; Dkt. 11-7 at 18, 25–26, 35, 42, 45–46.  A central theme of defense counsel's closing argument was attacking Starks's credibility based on his self-interest and inconsistencies.  Dkt. 11-10 89–103.  Whether or not some additional bases for impeachment existed, trial counsel's conduct with respect to Starks was not professionally deficient.  The claim is without merit.

Finally, because the underlying claims are without merit, Mosby's appellate counsel was not ineffective for failing to raise the claims on direct review.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001).

As none of Mosby's claims merit relief, the amended petition for writ of habeas corpus will be denied.

**B.  Motions for Appointment of Counsel and for Evidentiary Hearing**

Mosby filed a motion for appointment of counsel and a motion for an evidentiary hearing when he filed his amended petition.  Dkts. 18, 19, 22, 23.  The Court denied the motions without prejudice when it reopened the case.  Dkt. 28.  Because review of the pleadings and record demonstrate that Mosby's claims are without merit, and because that Mosby has not demonstrated how further factual development is warranted and might reasonably lead to a different result, the motions are denied.

## IV. CERTIFICATE OF APPEALABILITY

Before Mosby may appeal this decision, the Court must determine whether to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy § 2253(c)(2), Mosby must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (punctuation modified).  The Court finds that reasonable jurists would not debate the resolution of any of Mosby's claims.  The Court will therefore deny a certificate of appealability.

The Court also finds that because any appeal of this order would be frivolous, permission to appeal in forma pauperis will likewise be denied.  Fed. R. App. P. 24(a).

## V. CONCLUSION

Accordingly, the Court (i) denies with prejudice the amended petition for a writ of habeas corpus (Dkts. 16, 26); (ii) denies a certificate of appealability; (iii) denies permission to appeal in forma pauperis; (iv) grants Mosby's motion for extension of time to file a reply brief (Dkt. 32); (v) denies Mosby's motions for appointment of counsel (Dkts. 19, 22); and (vi) denies Mosby's motions for evidentiary hearing (Dts. 18, 23).

**SO ORDERED.**

Dated: February 12, 2024                           s/Mark A. Goldsmith
      Detroit, Michigan                           MARK A. GOLDSMITH
                                    United States District Judge